IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| Wanda I. González Villegas,<br><br>    Plaintiff,<br><br>    v.<br><br>Doctors' Center Hospital, et al.,<br><br>    Defendants. | **Civil No. 21-1592 (GMM)** |

**OPINION AND ORDER**

On March 3, 2025, Plaintiff Wanda I. González-Villegas ("Plaintiff") filed a *Motion in Limine* requesting to exclude Defendant Dr. Iolani García-Rosario's ("Dr. García") expert witness report prepared by Dr. Miguel A. Colón-Pérez ("Dr. Colón-Pérez"). For the reasons stated below, the *Motion in Limine* is **GRANTED IN PART AND DENIED IN PART.**

    **I.    RELEVANT FACTUAL AND PROCEDURAL HISTORY**

This is a medical malpractice case arising primarily out of the treatment provided to Plaintiff's father, Santos González Ponce ("Mr. González") at co-Defendant Doctors' Center Hospital and Caribbean Medical Center ("CMC") by defendants Dr. Glorimar Santos Llanos, Dr. Glorimar Santos-Rodríguez, and Dr. García at those medical institutions.

Relevant here, on March 3, 2025, Plaintiff timely filed her *Motion in Limine* requesting the exclusion of Dr. Colón-Pérez's

expert testimony and report. (Docket No. 188). First, Plaintiff argues that Dr. Colón-Pérez's expert testimony should be excluded since his report, dated August 31, 2024, is not signed. (Id. at 2). Second, Plaintiff posits that the expert report "is devoid of references to medical literature to support the opinions contained therein" and is only based on "the expert's say so, without reference to medical authorities, textbooks or literature." (Id. at 2-3). Third, Plaintiff contends that Dr. Pérez-Colón's report improperly vouches for Dr. García's credibility inasmuch his expert opinion relies on her own statement that she "never saw the blood cultures." (Id. at 3-5).

On March 20, 2025, Dr. García filed *Defendant's Opposition to Plaintiff's Motion in Limine*. (Docket No. 206). Therein, Dr. García responds that Dr. Colón-Pérez's expert report should not be excluded for a minor procedural defect. (Id. at 2). To this end, she argues that Plaintiff has not argued that the lack of signature will cause undue prejudice and that she is willing to supplement the report with a signed version. (Id.). As to the alleged failure to cite medical literature, Dr. García posits that the expert report "explicitly incorporates and applies recognized standards of care, including the IDSA (Infectious Diseases Society of America) and ATS (American Thoracic Society) Clinical Practice Guidelines for Community-Acquired Pneumonia." (Id. at 3). Further,

citing directly to the report, she contends that Dr. Colón-Pérez's statements derive from medical literature. Further, Dr. García argues that "the law does not require an expert report to include formal footnotes or a bibliography when the expert relies on widely accepted medical knowledge." (Id. at 4). As to this point, she references Dr. Colón-Pérez's curriculum vitae which highlights that he is "board certified in internal medicine and infectious diseases, is a member of well recognized societies in his fields of practice, has research, publications and presentations in his field, as well as he's a professor of medicine in several institutions in Puerto Rico". (Id.). Lastly, Dr. García contends that Plaintiff's claim that Dr. Colón-Pérez improperly vouches for her credibility is also unfounded. She posits that in his expert report, Dr. Colón-Pérez analyzes the medical record to assess whether her clinical decisions were reasonable and supported by the evidence. (Id.). Furthermore, she asserts that "any concerns regarding the basis for Dr. Colón's opinion go to the weight of the testimony, not its admissibility." (Id. at 5).

## II. APPLICABLE LAW

A. <u>Rule 702: The Admissibility of Expert Witness</u>

Fed. R. Evid. 702 controls the admissibility of expert witness testimony. *See* <u>Crow v. Marchand</u>, 506 F.3d 13, 17 (1st Cir. 2007) ("The touchstone for the admission of expert testimony in federal

court litigation is Federal Rule of Evidence 702."). The Rule dictates:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Fed. R. Evid. 702 assigns a "gatekeeping role for the judge" to ensure that the expert is "sufficiently qualified to assist the trier of fact" and "that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." Daubert v. Merrell Dow Pharm., 509 U.S. 579, 597 (1993); Kumho Tire Co. v. Carmichael, 526 U.S. 137, 147-49 (1999) (holding that Daubert applies to all expert testimony). A trial court "must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." Kumho Tire Co., 526 U.S. at 152. To aid trial judges in their role as gatekeepers, the Daubert Court set forth several factors that may be taken into consideration, none of which are determinative: (i) whether a theory or technique can and has been

tested; (ii) whether the theory or technique has been subjected to peer review and publication; (iii) whether the particular scientific technique has a known or potential rate of error; and (iv) the "general acceptance" of a theory or technique. *See* Daubert, 509 U.S. at 593-94.

To determine that an expert's evidence rests of reliable foundation the district court considers whether "the testimony is based on sufficient facts or data"; whether "the testimony is the product of reliable principles and methods"; and whether "the expert has reliably applied the principles and methods to the facts of the case." Smith v. Jenkins, 732 F.3d 51 (1st Cir. 2013) (*citing* Fed. R. Evid. 702). Where, as here, the factual basis of an expert's testimony is called into question, the district court must determine whether the testimony has "a reliable basis" considering the knowledge and experience of the relevant discipline. *See* Kumho Tire Co., 526 U.S. at 148. Thus, "nothing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply "too great an analytical gap between the data and the opinion proffered." General Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997).

The Court notes, however, the difference between "unreliable" support and "insufficient" support for an expert witness' conclusion. *See* Martínez v. United States, 33 F.4th 20, 24 (1st Cir. 2022) (*quoting* Milward v. Acuity Specialty Prods. Grp., Inc., 639 F.3d 11, 22 (1st Cir. 2011)). Whether the underpinning of an expert's opinion is insufficient is "a matter affecting the weight and credibility of the testimony – a question to be resolved by the jury." Id. (*quoting* Milward, 639 F.3d at 22). Conversely, "trial judges may evaluate data offered to support an expert's bottom-line opinions to determine if that data provides adequate support to mark the expert's testimony as reliable." Milward, 639 F.3d at 15 (*quoting* Ruiz-Troche v. Pepsi Cola of Puerto Rico Bottling Co., 161 F.3d 77, 81 (1st Cir. 1998)). "In a motion to exclude pursuant to Daubert, the burden on the party who proffers expert testimony is not to prove that an expert's conclusion is correct but rather that the expert reached their conclusion in a scientifically sound and methodologically reliable way." Id. at 85.

Ultimately, Rule 702 is generally interpreted liberally in favor of the admission of expert testimony. *See* Martínez, 33 F4th at 24 (*quoting* Levin v. Dalva Bros., Inc., 459 F.3d 68, 78 (1st Cir. 2006)).

Furthermore, to ensure reliability and intellectual rigor, experts "must be able to produce a written report or testimony supported by an accepted methodology that is based on substantial scientific, technical, or other specialized knowledge." <u>Figueroa v. Simplicity Plan de Puerto Rico</u>, 267 F.Supp.2d 161, 164 (D.P.R. 2003). "Failure to provide a testimony or a report detailing the basis for the expert's opinion in a comprehensive scientific manner can cause the expert witness and his report to be eliminated from trial." <u>Id.</u> (*citing* Justo Arenas & Carol M. Romey, <u>Professional Judgment Standard and Losing Games for Psychology, Experts and the Courts</u>, 68 Rev. Jur. U.P.R. 159, 180 (1999)).

B.   <u>Fed R. Civ. P. 26(a)(2)(B)</u>

Apart from conforming to Fed. R. Evid. 702, expert witness testimony must also conform to Rule 26 of the Federal Rules of Civil Procedure. This Rule compels parties to disclose any witness they can expect to use at trial under Fed. R. Evid. 702. Per Subsection (2)(B) of Fed. R. Civ. P. 26, this also applies to witnesses' written reports. Said section reads as follows:

2) Disclosure of Expert Testimony.

. . .

(B) Witnesses Who Must Provide a Written Report. Unless otherwise stipulated or ordered by the court, this disclosure must be accompanied by a written report--prepared and signed by the witness--if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's

>employee regularly involve giving expert testimony. The report must contain:
>
>(i) a complete statement of all opinions the witness will express and the basis and reasons for them;
>(ii) the facts or data considered by the witness in forming them;
>(iii) any exhibits that will be used to summarize or support them;
>(iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;
>(v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and
>(vi) a statement of the compensation to be paid for the study and testimony in the case.

Fed.R.Civ.P. 26(a)(2)(B). Failure to comply with Fed. R. Civ. P. 26 may preclude a party from utilizing the witness or expert testimony at a hearing, on a motion or at trial. It may even imply sanctions against the offending party pursuant to Fed. R. Civ. P. 37(c)(1). This occurs "unless the failure was substantially justified or is harmless." Gay v. Stonebridge Life Ins. Co., 660 F.3d 58, 62 (1st Cir. 2011).

In medical malpractice suits, the plaintiff must submit an expert report including "all of the opinions that the expert will express at trial and the reasons for them." Esposito v. Home Depot U.S.A., Inc., 590 F.3d 72, 77 (1st Cir. 2009); see also Gonzalez Rivera v. Hospital HIMA-Caguas, 2018 WL 4676925, at *3 (D.P.R. 2018). It must be a "'detailed and complete' [report]. . .[And] include the substance of the testimony. . .expected to give on

direct examination." Salgado by Salgado v. General Motors Corp., 150 F.3d 735, 741 n. 6 (D.P.R. 1998) (internal citations omitted).

"The few reported cases interpreting Rule 26(a)(2)(B) indicate that the preparation and signing requirement is designed to ensure that expert reports express 'what the expert has freely authorized and adopted as his own and not merely for appeasement or because of intimidation or some undue influence by the party or counsel that has retained him.'" Flebotte v. Dow Jones & Co., Inc., No. CIV.A. 97-30117-FHF, 2000 WL 35539238, at *8 (D. Mass. Dec. 6, 2000) (quoting Marek v. Moore, 171 F.R.D. 298, 302 (D.Kan.1997)). "[T]he absence of an expert's signature is curable, thereby rendering the defect harmless. As long as the report is otherwise sufficiently in compliance with the requirements of Rule 26(a)(2)(B), an expert may submit a subsequent affidavit adopting the statements in his or her previously submitted and unsigned expert report." Wilderness Dev., LLC v. Hash, No. CV 08-54-M-JCL, 2009 WL 564224, at *4 (D. Mont. Mar. 5, 2009); see also Adams v. J. Meyers Builders, Inc., 671 F. Supp. 2d 262, 269 (D.N.H. 2009) (citing Jenkins v. Bartlett, 487 F.3d 482, 488 (7th Cir.2007)).

### III. DISCUSSION

Through her *Motion in Limine*, Plaintiff seeks to exclude the testimony of Dr. Colón-Pérez as an expert witness as to Dr. García for three reasons. We discuss them in turn.

A.   Expert Report "Prepared and Signed by the Witness"

As discussed above, Rule 26(a)(2)(B) specifically states that an expert's written report must be "prepared and signed by the witness[.]" Fed. R. Civ. P. 26(a)(2)(B). Certainly, Dr. Colón-Pérez's expert report is not signed. Yet, Plaintiff does not assert how the lack of signature is prejudicial. The absence of an expert's signature is curable and renders the defect harmless. Consequently, the exclusion of Dr. Colón-Pérez's expert report is not warranted on this basis alone. Notwithstanding, Dr. García shall ensure that her expert submits a subsequent affidavit adopting the statements in his previously submitted and unsigned expert report or to submit a signed expert report, on or before April 4, 2025.

The question remains, however, whether the report otherwise complies with the substantive requirements of Rule 26(a)(2)(A).

B.   Dr. Colón-Pérez as an Expert Witness

The Court turns to Plaintiff's argument that Dr. Colón-Pérez's report "is devoid of references to medical literature to support the opinions contained therein".

1.   Qualifications

The record reflects that Dr. Colón-Pérez is board certified in internal medicine since 1989 and in infectious diseases since 1994. He is admitted to practice medicine in Puerto Rico and the

states of Florida and Colorado. *See* (Docket No. 206-1 at 1). Dr. Colón-Pérez is also a member of various well recognized societies in his fields of practice, such as the "Infectious Diseases Society of America" and the "Socieded Panamericana de Enfermedades Infecciosas." (Id. at 3). Dr. Colón-Pérez's curriculum vitae also reflects that he has conducted research in his field and has various publications and presentations relating to his specialty in infectious diseases. *See* (id. at 4-7).

Plaintiff does not contest Dr. Colón-Pérez's qualifications. Based on the educational background and professional experience outlined in Dr. Pérez-Colón's curriculum vitae, the Court finds that they are sufficient to satisfy the requirement that a proposed expert witness be qualified by "knowledge skill, experience, training, or education." Fed. R. Evid. 702.

   2.   Dr. Colón-Pérez's Expert Report

Dr. Colón-Pérez's expert report, dated August 31, 2024, indicates that for its preparation he reviewed the malpractice claim, the expert report by Dr. José L. Cangiano, the hospital chart from Caribbean Medical Center and a video conference with Dr. García. (Docket No. 188-1 at 1). A thorough reading of the report demonstrates that Dr. Colón-Pérez did not directly cite any medical literature. However, throughout the report Dr. Colón-Pérez references data and medical terms that certainly derive from his

field of medicine: "In the USA, lower respiratory tract infections surpass all other infections in terms of morbidity and mortality" (Id. at 5); "In all cases of severe bacterial pneumonia, immediate initiation of empirical therapy is crucial to prevent sepsis. If left untreated, pneumonia can result in an overall mortality of up to 30%" (Id. at 6); "Based on the antibiotic susceptibilities, Methicillin resistant Staphylococcus aureus is defined as an oxacillin inhibitory concentration of > or = to 4 micrograms/mL" (Id.).

Dr. Colón-Pérez concludes that "[w]hen the involvement of Dra. Iolani Garcia Rosario, in the care of Mr. Santos Gonzales Ponce, is evaluated in full detail, it is clear that the patient arrived at the hospital with clinical signs and symptoms of facial cellulitis." (Id. at 7). He also construes that "on further evaluation by Dra Garcia she noticed that the most important diagnosis in this case was the pneumonic process which clearly was more severe with lung exam w/ rhonchi, lung infiltrates on CXR and Chest CT Scan, severe leukocytosis and severe hypoxemia." (Id.). He adds: "[a]t the end of her week rotation and not being satisfied with the clinical, radiographic and persistent leukocytosis and after discussion with the Infectious Diseases specialist a decision was made to change empiric antibiotics therapy to

Cefepime." (Docket No. 188-1 at 6). Ultimately, Dr. Colón-Pérez concludes that:

> there is no deviation of the best practice of medicine by Dra. Iolani Garcia Rosario when her clinical analysis of the case, which was supported by the Infectious Diseases and Pneumology service, was that the most likely cause of the poor medical condition of the patient was due to the severe pneumonic process and this source of infection needed the most urgent care. The use of Levofloxacin is included, and is one of the pillars, of empirical antibiotics therapy for Community Acquired Pneumonia in the IDSA and ATS Clinical Practice Guidelines in the diagnosis and treatment of CAP.

(Id.).

The Court notes that an expert "need not necessarily cite literature or a published standard in demonstrating that he has relevant expertise. . .instead, his personal experience alone may be sufficient." Irizarry-Pagan v. Metro Santurce, Inc., Civil No. 18-1532 (JAG), 2022 WL 4243567, at *4 (D.P.R. Aug. 8, 2022), report and recommendation adopted, (D.P.R. Aug. 31, 2022) (*citing* Delgado v. Dorado Health Inc., 14-CV-1735 (PAD), 2016 WL 4742257, at *4 (D.P.R. Sept. 2, 2016) (report and recommendation subsequently adopted in 2016 WL 4742259)). Furthermore, if an expert's testimony rests upon "'good grounds,' based on what is known,' it should be tested by the adversarial process, rather than excluded for fear that jurors will not be able to handle the scientific complexities." Milward, 639 F.3d at 15 (*quoting* Daubert, 509 U.S. at 590, 596) (internal quotations and citations omitted).

"Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Id. (*quoting* Daubert, 509 U.S. at 596). Fed. R. Evid. 703 and 705 "place the full burden of exploration of the facts and assumptions underlying the testimony of an expert witness squarely on the shoulders of opposing counsel's cross-examination." Toucet v. Maritime Overseas Corp., 991 F.2d 5, 10 (1st Cir. 1993) (*quoting* Smith v. Ford Motor Co., 626 F.2d 784, 793 (10th Cir. 1980)) (internal quotations omitted).

Following the reasoning of other courts, particularly the First Circuit Court of Appeals in Martínez, the Court concludes that Dr. Colón-Pérez need not necessarily cite literature or a published standard in demonstrating that he has relevant expertise here; instead, his personal experience alone may be sufficient. In sum, the medical records, combined with Dr. Colón-Pérez's own clinical experience, provided a sufficiently reliable basis for his opinions. *See* Martinez, 33 F.4th at 32–33.

Other than complaining about absence of reference to publications and medical literature, Plaintiff does not specifically explain why the testimony in question was insufficient or unreliable as to show what was the national standard of care that applied in this case. Furthermore, the

sufficiency of Dr. Colón-Pérez's professional experience has not actually been challenged here.

Again, it is Plaintiff's obligation under Fed. R. Evid. 703 to explore the facts and assumptions underlying the testimony of the witness. *See* Toucet, 991 F.2d at 10. Whether the factual underpinning of Dr. Colón-Pérez's opinion is insufficient or weak is "a matter affecting the weight and credibility of the testimony – a question to be resolved by the jury." Saldana Caban v. Centro Medico del Turabo, Inc., No. CV 22-1019 (GMM), 2023 WL 5122171, at *6 (D.P.R. Aug. 10, 2023). If Plaintiff believes that Dr. Colón-Pérez's testimony is shaky, uncertain, or dubious, it is her duty to cross-examine him. Plaintiff could have done it at a deposition and may still do it at trial. *See* id. 2023 WL 5122171, at *4-5.

C.  Expert Testimony Regarding Witness Credibility

Lastly, the Court addresses Plaintiff's claim that Dr. Colón-Pérez opinion improperly vouches for Dr. García's credibility. In his report Dr. Colón-Pérez concludes:

> It is critical in this case that Dra. Garcia was never notified of a panic level of positive blood cultures w/ gram positive cocci on 11-24 and neither was notified on 11-27 when the final results of blood cultures showed MRSA. Blood culture analysis were performed at Immuno Reference Labs in San Juan and not in-house in Caribbean Medical Center in Fajardo. Throughout the chart there is evidence documented by Dr. Ortiz and Dr. Santiago that results of the blood cultures and sputum cultures were

> not in the hospital chart and were also not available when Dr Santiago called the lab.

(Docket No. 188-1 at 7). Further he states:

> In Dr. Cangiano report he clearly identified the main deviation from the best practice of medicine the decision to discontinue the Vancomycin and Clindamycin with the knowledge of the bacteremia with MRSA. When I was first asked to evaluate this case, it was also my concern since, especially the Vancomycin, is critical in the management of MRSA bacteremia. Then on the video conference with Dra Garcia she stated that she never saw the blood culture results in the chart, and she was never notified of the panic value of the positive blood cultures. Despite the fact that the results of the blood cultures are available in the chart for our review there is absolutely no evidence that any of the physicians involved in the case were notified or had access to these results. Therefore, the change in antibiotic therapy was justified clinically by the assessment that the main focus of infection was the pneumonia since she did not have any knowledge of the bacteremia.

(Id. at 8).

Determining the credibility of a witness is a function reserved exclusively for the jury. *See* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); United States v. Gonzalez-Maldonado, 115 F.3d 9, 15 (1st Cir. 1997) ("The competency of a witness to testify is a determination to be made by the trial judge, but issues of credibility are for the trier of fact."). Accordingly, "an expert's opinion that another witness is lying or telling the truth is ordinarily inadmissible pursuant to Rule 702 because the opinion exceeds the scope of the expert's specialized knowledge and therefore merely informs the jury that it should

reach a particular conclusion." United States v. Shay, 57 F.3d 126, 131 (1st Cir. 1995). Other Circuit Courts have similarly held that "expert testimony which does nothing but vouch for the credibility of another witness" is inadmissible because it "encroaches upon the jury's vital and exclusive function to make credibility determinations, and therefore does not 'assist the trier of fact.'" United States v. Charley, 189 F.3d 1251, 1267 (10th Cir. 1999). This limit applies to all witnesses, regardless of their expertise. Therefore, regardless of whether an expert possess "medical knowledge and skills that relate directly to credibility," they are barred from opining as to whether a witness is being truthful. United States v. Scop, 846 F.2d 135, 142 (2d Cir.), on reh'g, 856 F.2d 5 (2d Cir. 1988) (*citing* United States v. Azure, 801 F.2d 336, 340-41 (8th Cir. 1986)).

In this case, it is a contested issue of fact whether defendant physicians evaluated certain blood cultures now included in Mr. González's medical record at the CMC, and if those blood culture were available to the physicians, particularly Dr. García, at the time. *See* (Docket No. 172 at 2). To this point, Dr. Colón-Pérez states in his expert report that "[i]t is critical in this case that Dra. Garcia was never notified of a panic level of positive blood cultures w/ gram positive cocci on 11-24 and neither was notified on 11-27 when the final results of blood cultures

showed MRSA." (Docket No. 188-1 at 8). He adds that "[t]hen on the video conference with Dra Garcia she stated that she never saw the blood culture results in the chart, and she was never notified of the panic value of the positive blood cultures." He also concludes that "[d]espite the fact that the results of the blood cultures are available in the chart for our review there is absolutely no evidence that any of the physicians involved in the case were notified or had access to these results." (Id.).

Certainly, Dr. Colón-Pérez does not directly say that Dr. García is truthful. Yet, he is giving weight to her version of events and reaching a concluding based, at least partially, on that version. These statements in the expert report are unsubstantiated and speculative at best and would not assist the trier of fact. Dr. García's expert must assist the trier of fact in determining credibility, not determine credibility for the trier of fact.

Rule 703 was never intended to allow a witness, "under the guise of giving expert testimony, to in effect become the mouthpiece of the witnesses on whose statements or opinions the expert purports to base his opinion." Trustees of Boston U. v. Everlight Elecs. Co., Ltd., 141 F.Supp.3d 147, 149 (D. Mass. 2015) (citing Factory Mut. Ins. Co. v. Alon USA L.P., 705 F.3d 518, 524 (5th Cir. 2013)). "As the First Circuit has held in the criminal

context, *a party may not use an expert to 'bolster the credibility of [its] fact witnesses by mirroring their version of events.'*" In re Intuniv Antitrust Litig., No. 1:16-CV-12396-ADB, 2020 WL 5995326, at *20 (D. Mass. Oct. 9, 2020) (*quoting* United States ex rel. Dyer v. Raytheon Co., No. 08-cv-10341, 2013 WL 5348571, at *12 (D. Mass. Sept. 23, 2013)) (emphasis added).

Consequently, although the Court declines to exclude Dr. Colón-Pérez's testimony as an expert witness in its entirety, he is precluded from testifying as to whether Dr. García had access to the blood cultures when determining the course of treatment for Mr. González. Dr. García has been announced as a fact witness in this case and she will be able to testify on her own behalf as to this point.

### III. CONCLUSION

For these reasons, the *Motion in Limine* is **GRANTED IN PART AND DENIED IN PART.**

IT IS SO ORDERED.

In San Juan, Puerto Rico, March 27, 2025.

s/Gina R. Méndez-Miró
GINA R. MÉNDEZ-MIRÓ
UNITED STATES DISTRICT JUDGE